**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Robin Cribb Aldana, ) ) ) Plaintiff, ) ) vs. ) ) RJ Reynolds Tobacco Company, Phillip Morris, ) USA, ) ) Defendants. ) _____ ) | Civil Action No.: 2:06-3366-CWH **ORDER** |

This matter is before the court on a motion to dismiss by the defendants RJ Reynolds Tobbacco Company ("RJ Reynolds") and Phillip Morris, USA ("Phillip Morris").

I. Plaintiff's Allegations

The plaintiff Robin Cribb Aldana ("Aldana") is a resident and citizen of Florida and was a resident and citizen of South Carolina when she commenced this action. Aldana is the personal representative of the estate of Dolly Lucille Cribb ("Cribb"), a resident and citizen of South Carolina during her lifetime. Aldana is the only child and sole heir at law of Cribb. Cribb was born on September 7, 1955. Around 1970 during her mid-teen years, Cribb began smoking Winston cigarettes manufactured by the defendant R.J. Reynolds. She became addicted to cigarettes very quickly and smoked one to two packs a day. Around 1990, she began smoking Marlboro Lights and Ultra Lights manufactured by Phillip Morris USA because she believed that Marlboro Lights and Ultra Lights were less harmful than other cigarettes. On October 13, 2003, Cribb died as the result of lung cancer, emphysema, airway obstruction, cell damage, genetic

changes in lung and airway cells, cardiovascular injuries, and other maladies.

According to the plaintiff, sometime between the 1940s and 1960s, the defendants conducted research and discovered that nicotine is addictive.[1]  The defendants allegedly concealed their knowledge of nicotine's addictiveness from the public and from public health officials.  In order to maximize profits, the defendants manipulated the amount of nicotine in cigarettes so that users would become addicted.  The defendants repeatedly insisted that smoking was desirable and denied that their cigarette products containing nicotine were addictive despite their knowledge to the contrary.  For example, on April 14, 1994, the chief executives of each of seven tobacco companies, including the defendant tobacco companies in this case, testified before Congress that nicotine is not addictive.  Thereafter, Phillip Morris took out a full-page newspaper advertisement that stated, "Phillip Morris does not believe cigarette smoking is addictive."

In 1966, the FTC notified the defendant cigarette manufacturers that it would test cigarettes for tar and nicotine using the Cambridge Filter Method, in which a machine simulated smoking and tested the level of tar in cigarettes.  As a result, the defendants began to manufacture "low tar" or "light" cigarettes.  The defendants soon realized that: (1) the public believes that low tar cigarettes are safer than other cigarettes; consequently, addicted smokers switch to low tar cigarettes instead of quitting smoking altogether; and (2) in order to achieve a satisfactory hit of nicotine, smokers smoke low tar cigarettes differently than regular cigarettes.  For example, smokers take more or deeper puffs or block ventilation holes in the filter.

---

[1] The plaintiff relies on the defendants' internal reports and documents as well as the defendants' patents.

Consequently, smokers ingest the same amount of nicotine and tar from regular and low tar cigarettes.  Although the defendants were aware of the public's misperceptions, the defendants did not correct them.  Instead, the defendants promoted and sold cigarettes by deceptively concealing and fraudulently and negligently misrepresenting the highly addictive nature of their cigarette products.

II.  Procedural History

On October 12, 2006, the plaintiff brought this wrongful death and survival action seeking compensatory and punitive damages and alleging counts of negligence, strict liability, breach of warranty, fraud, and misrepresentation against the defendants in the Court of Common Pleas for Georgetown County, South Carolina.  On November 29, 2006, the defendants removed the action to this court on the basis of diversity jurisdiction.  RJ Reynolds is a North Carolina corporation with its principal business in North Carolina.  Phillip Morris is a Virginia corporation with its principal place of business in Virginia.

On December 6, 2006, the defendants moved to dismiss this case.  On June 5, 2007, the Court heard the defendants' motion to dismiss.  At that hearing, the defendants raised the standard for deciding a 12(b)(6) motion to dismiss as set forth by the Supreme Court in <u>Bell Atlantic v. Twombley</u>, 127 S.Ct. 1955 (2007).  In <u>Bell Atlantic v. Twombly</u>, the Supreme Court overruled the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitled it to relief, as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The plaintiff stated that it had drafted the complaint prior to the Supreme Court's decision in <u>Bell Atlantic</u> and requested leave to re-file its complaint.  The Court granted the plaintiff 30 days to

re-plead the case in light of the Supreme Court's recent decision.

On July 5, 2007, the plaintiff filed an amended complaint. The plaintiff abandoned her breach of warranty and failure to warn claims. She now asserts claims for product liability and negligence on the basis of defective design, fraud, and negligent misrepresentation; fraudulent inducement, fraudulent misrepresentation, and deceptive advertising; and negligent misrepresentation. On July 23, 2007, the defendants supplemented their motion to dismiss. The defendants allege that: (1) the plaintiff's product liability and negligence claims fail because cigarettes are not defective or unreasonably dangerous as a matter of law; (2) the plaintiff's claims are preempted by federal law; (3) the First Amendment protects the defendants' representations to Congress; and (4) the plaintiff has failed to plead fraud with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. On September 24, 2007, a second hearing was held on the defendants' motion to dismiss. In order to dispose of this motion, this Court must look to federal preemption and South Carolina law and apply the same to each cause of action.

III.  Standard for Deciding a 12(b)(6) Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). It is well settled that a pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is not required to set forth heightened fact pleading of specifics, "but only enough facts to state a claim

for relief that is plausible on its face. [Where] the plaintiffs [fail to nudge] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974 (2007).

IV. Count I Product Liability and Count II Negligence

    A. Preemption

In 1969, Congress passed the Public Health Cigarette Smoking Act (the "Act") that amended certain provisions of the Federal Cigarette Advertising and Labeling Act, which provided a comprehensive federal scheme for regulating the types of warning labels that must be placed on cigarette packages and advertisements. Section 4 of the Act made unlawful the sale of cigarettes without a conspicuous label warning the buyer of the potential hazards. 15 U.S.C. § 1333(a). The Act required sellers to place the following label on all cigarette packages: "Warning: The Surgeon General Has Determined That Cigarette Smoking is Dangerous To Your Health." In 1985, Congress amended the Act to require sellers to use one of the following four warnings on a rotating basis:

- SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy

- SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Heath

- SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, and Low Birth Weight.

- SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monxide

Section 5 of the Act, a preemption provision, provides:

    (a) No statement related to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

> (b) *No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes, the packages of which are labeled in conformity with the provisions of this chapter.*

15 U.S.C. § 1334 (emphasis added).  The extent of preemption arose in a 1992 action brought on behalf of Rose Cipollone who died of lung cancer after smoking three defendant cigarette manufacturers' cigarette products from 1942 to 1984.  *See* Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992).  The three defendant cigarette manufacturers claimed that the Act preempted Cipollone's claims.  The Supreme Court held that the Act preempted post-1969 claims that are predicated upon a "failure to warn" theory and on the theory that the defendants committed fraudulent misrepresentation by creating advertisements which neutralized the effect of federally mandated warning labels.  Id. at 524-25, 527-28.  The test for determining whether a claim is preempted is whether the claim would require the imposition under state law of a requirement or prohibition based on smoking and health with respect to advertising and promotion.  Id.  A court must examine a fraud claim against a cigarette manufacturer and determine whether the claim is predicated upon a duty not to deceive or upon a duty based on smoking and health.  Id.  A plaintiff may not simply re-label its failure to warn claims as fraudulent concealment claims.  *See* id. at 524-25 (holding that "insofar as [failure to warn claims] require a showing that [the defendants'] post-1969 advertising and promotion should have included additional, or more clearly stated warnings, those claims are preempted.").

In short, the Act preempts claims which allege that the cigarette manufacturers failed to warn of the dangers of smoking and which allege that warnings used in cigarette advertising promotion or packaging are inadequate.  The Act does not preempt claims that a cigarette manufacturer affirmatively engaged in deceit by concealing material facts that it had a duty to

disclose through some means other than advertising or promotion. Id. at 508, 527-29.[2] Nor does the Act preempt fraud, even if those fraudulent statements are made in advertisements. Id. at 524-25.[3]

The plaintiff's product liability and negligence claims assert that the defendants' cigarettes were defectively designed. This claim is not preempted. *See* Cipollone v. Liggett Group, Inc., 505 U.S. at 523 (noting that the Act "does not generally preempt 'state law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes'"). However, in the course of stating the plaintiff's unpreempted claim for defective design, the plaintiff refers to the defendants' failure to include adequate warnings in the packaging and advertising of their cigarette products. Such allegations are preempted.

    B.  South Carolina Law

Under South Carolina law, in order to recover for product liability, a plaintiff must show that the product was in a defective condition unreasonably dangerous to the user. Allen v. Long Mfg., NC., Inc., 505 S.E.2d 354, 356 (S.C. Ct. App. 1998). The defendants claim that the plaintiff's product liability[4] and negligence claims fail because cigarettes are not defective or

---

[2] In this case, the plaintiff has not alleged that the defendants had a duty to disclose material facts on the dangers of smoking through some means other than advertising or promotion.

[3] The defendants claim that the plaintiff's claim for fraud does not survive the death of the decedent. The Court is uncertain as to the law on this issue and has decided to defer ruling thereon until some later time.

[4] The plaintiff's amended complaint asserts a product liability claim for defectively designed cigarettes. The plaintiff alleges that the defendants are strictly liable for their defective and unreasonably dangerous cigarette products. The deceased began smoking the defendants' cigarettes in 1970. The plaintiff may not recover for strict liability for injuries resulting from

unreasonably dangerous as a matter of law.  Under South Carolina law, a seller may prevent a product from being unreasonably dangerous if he places an adequate warning on the product regarding its use.  Id. at 357 (*citing* Restatement (Second) of Torts §402A cmt. j. (1965)).

The plaintiff argues that the defendant manufacturers' warning is inadequate because their cigarette products are not safe for use when the warning is followed.  Comment j of Section 402A of the Restatement (Second) of Torts provides: "A seller may prevent a product from being 'unreasonably dangerous' if the seller places an adequate warning on the product regarding its use.  If a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous."

The plaintiff's argument is without merit for two reasons.  First, "[i]t is well settled under South Carolina law that a seller may prevent a product from being unreasonably dangerous if the seller places an adequate warning on the product regarding its use." Phelan v. Synthes, 35 Fed. Appx. 102, 109 (4th Cir. 2002); *see also* Curcio v. Caterpillar, Inc., 543 S.E.2d 264, 269 (S.Ct. App. 2001) (rejecting plaintiff's defective design claim because an adequate warning rendered the product neither defective nor unreasonably dangerous) (rev'd. on other grounds).

Second, the defendants' warnings on their cigarette products are adequate as a matter of law because the defendants placed warnings on their cigarette products that were required by the Act.  *See* Cipollone v. Liggett Group, Inc., 505 U.S. at 521 (holding that a plaintiff may not assert a claim that cigarette manufacturers should have included additional or more clearly stated

---

cigarettes purchase prior to July 9, 1974.  Under South Carolina law, no cause of action for strict liability exists for products placed in the stream of commerce prior to July 9, 1974, the effective date of South Carolina's Defective Products Act.  Martin v. Fleissner, GmbH, 741 F.2d 61, 65 (4th Cir. 1984).

warnings); Medtronic v. Lohr, Inc., 518 U.S. 470, 488 n.9 (1996) ("The [Act] specified the precise warning to smokers that Congress deemed both necessary and sufficient."). The plaintiff does not deny that the defendants' warnings complied with the Act.

Because the defendants' warnings on their cigarette products complied with the Act, those warnings are adequate as a matter of law, and the defendants' cigarette products were not defective and unreasonably dangerous under South Carolina law. As a result, the plaintiff's claims for product liability and negligence fail. Therefore, the plaintiff's claims for product liability and negligence are dismissed.

V. Count III Fraudulent Inducement, Fraudulent Misrepresentation, and Deceptive Advertising

    A.  Preemption

The Act does not preempt claims of fraudulent misrepresentation. However, a court must examine a fraud claim against a cigarette manufacturer to determine whether the claim is a true fraud claim or whether the claim is a relabeled preempted claim. Id. First, a claim that cigarette manufacturers neutralized warnings is predicated on a state-law prohibition against statements in advertising that tend to minimize the health hazards associated with smoking. Id. Such claims are preempted. Id. Second, failure to warn claims are preempted, and a plaintiff may not simply relabel her failure to warn claims as fraud claims. See id. at 524-25 (holding that "insofar as [failure to warn claims] require a showing that [the defendants'] post-1969 advertising and promotion should have included additional, or more clearly stated warnings, those claims are preempted."). Count III of the plaintiff's complaint refers to the defendants' failure to warn. Such allegations are preempted. However, it appears that Count III sets forth a claim for fraudulent misrepresentation, which is not preempted.

B.  South Carolina and federal law

To state a claim for fraud, the plaintiff must allege (1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or a reckless disregard for its truth or falsity; (5) intent that the plaintiff act upon the representation; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on the truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.  Hendricks v. Hicks, 649 S.E.2d 151, 152 (S.C. Ct. App. 2007).  In addition, a claim of fraud is held to a heightened pleading standard.  Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The Fourth Circuit Court of Appeals has held that the rule requires pleading of the time, place, and contents of the false representations, as well as the identity of the person making the representations. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  Rule 9(b) serves four purposes: (1) to put the defendants on notice so that the defendants have sufficient information to formulate a defense; (2) to protect defendants from frivolous suits; (3) to eliminate fraud actions in which all facts are learned after discovery; (4) to protect the defendants from harm to their goodwill and reputation.  Id.  In this case, the plaintiff alleges that the defendants made false representations to the federal government, false newspaper statements, and other false statements to the public.  The Court will address each category seriatim.

1. False Representations to the Federal Government

The plaintiff alleges that the defendants have made fraudulent misrepresentations to the federal government.  First, at a public hearing held on March 25, 1994, the defendants allegedly

misrepresented the highly addictive nature of their cigarette products to a Congressional Subcommittee on Health and Environment.  Second, in 1997, the Federal Trade Commission ("FTC") solicited public comment on a proposal to change the method by which the level of nicotine and tar in cigarettes is determined.  The defendants told the FTC that the phenomenon of smokers blocking vent holes in order to inhale more nicotine is not documented or common.  The defendants also represented to the FTC that the defendants have not claimed that low-tar cigarettes are safe or safer than other cigarettes.  The plaintiff claims that when the defendants made these statements to Congress and the FTC, the defendants knew that these statements were false.

a.  Noerr Pennington Doctrine

The defendants argue that their statements to Congress and the FTC are protected by the Noerr-Pennington Doctrine.  The Noerr-Pennington doctrine arises from two Supreme Court cases, E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 135-45 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657, 669-70 (1965).  The Supreme Court, citing First Amendment and federalism concerns, held that private actors are immune from antitrust liability for petitioning the government, even when the private actors' motives are anticompetitive.  Noerr-Pennington immunity protects petitions to all departments of the government.  See Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

The defendants claim that the Noerr-Pennington doctrine is not restricted to the antitrust realm and that the Noerr Pennington doctrine provides immunity on the basis of the First Amendment to all petitions to the federal government.  However, the Noerr-Pennington doctrine does not provide limitless immunity.  Statements made in the course of petitioning the

government are considered a "mere sham" when speaker does not have a true interest in the outcome of the effort to influence government because the effort "is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. at 144.  The Fourth Circuit Court of Appeals has held that deliberate false and material representations fall within the sham exception of Noerr-Pennington immunity.  Hospital Bldg. Co. v. Trustees of Rex Hosp., 691 F.2d 678, 687 (4th Cir. 1982).

In this case, the plaintiff alleges that the defendants made deliberate false and material misrepresentations to the federal government.  Therefore, the Court concludes that alleged deliberate false and material misrepresentations made by the defendants to the federal government are not protected by the Noerr-Pennington doctrine.  Accordingly, the plaintiff's claims related to the defendants' alleged deliberate false and material misrepresentations to the federal government should be examined as any other fraud or negligent misrepresentation claims in order to determine whether the complaint sufficiently pleads the elements of fraud under South Carolina law and Federal Rule of Civil Procedure 9(b).

The complaint includes the time, place, and contents of the allegedly false representations made to the federal government, but the complaint does not allege that the decedent relied on the defendants' allegedly fraudulent statements to the government.  Therefore, the Court grants the defendants' motion to dismiss with respect to the plaintiff's claims that the defendants made false representations to the government.

   2. False Newspaper Advertisement

According to the complaint, the day after the defendants' false statements to Congress,

Phillip Morris ran full page newspaper advertisements stating "Phillip Morris does not believe cigarette smoking is addictive," despite Phillip Morris's knowledge and belief of the statement's falsity. The complaint sufficiently states the time, place, and content of the false representation in the newspaper in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. Paragraph 123 of the plaintiff's amended complaint states that the decedent relied on false statements made to the general public. The plaintiff has sufficiently stated a claim of fraud with respect to this allegedly false statement.

### 3. Other False Statements

The plaintiff also alleges that "Defendant Tobacco Companies provided false explanations to consumers and governmental entities regarding the health hazards of tobacco and the addictive qualities of nicotine through their deceptive advertising." This general allegation is insufficient to state a claim for fraud because the plaintiff fails to allege the elements of fraud or to identify the time, place, and contents of the allegedly false representations. Therefore, the plaintiff's allegation of fraud is dismissed with respect to the defendants' alleged "false explanations to consumers and governmental entities regarding the health hazards of tobacco and the addictive qualities of nicotine through their deceptive advertising."

The Court grants in part the defendants' motion to dismiss Count III Fraudulent Inducement, Fraudulent Misrepresentation, and Deceptive Advertising. The plaintiff's claim concerning the defendants' false representations to the federal government are dismissed because the plaintiff has not alleged that the decedent relied on those misrepresentations. The plaintiff's claim that the defendants made "false explanations to consumers and governmental entities regarding the health hazards of tobacco and the addictive qualities of nicotine through their

deceptive advertising" is dismissed because the plaintiff has failed to allege the speaker, time, place, and contents of these alleged false representations. The plaintiff's claim of Phillip Morris's alleged false newspaper advertisement remains.

VII. Count IV Negligent Misrepresentation

    A. Preemption

Count IV of the plaintiff's complaint does refer to the defendants' failure to warn. Such allegations are preempted. However, it appears that Count IV does set forth a claim for fraudulent misrepresentation, which is not preempted when predicated on a duty not to deceive. *See* Cipollone v. Ligett Group, Inc., 505 U.S. at 523 (rejecting a distinction between intentional and unintentional torts).

    B. South Carolina Law

To state a claim for negligent misrepresentation, a plaintiff must allege (1) a false representation made by the defendant to the plaintiff, (2) the defendant's pecuniary interest in the statement, (3) breach of a duty of care owed by the defendant to the plaintiff, (4) justifiable reliance by the plaintiff on the representation, and (5) loss suffered as a result of such justifiable reliance. Redwend Ltd. P'ship v. Edwards, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003). The plaintiff alleges that the defendants breached their duty owed to the decedent when they made false and deceptive advertisements. The complaint alleges that the defendant had a pecuniary interest in its false statements.

The defendants argue that the plaintiff did not rely on their alleged negligent misrepresentations and that if the plaintiff did rely on their alleged negligent misrepresentations, the reliance was not justifiable. The complaint alleges that the decedent was induced to rely on

the defendants' superior knowledge. It appears that the plaintiff has stated a claim for negligent misrepresentation. The Court therefore denies the defendants motion to dismiss the plaintiff's negligent misrepresentation claim.

IX.  Count V Wrongful Death and Count VI Survival

South Carolina's wrongful death statute allows a decedent's beneficiaries to recover damages in tort sustained by the beneficiaries from the death of the deceased. Bennett v. Zorn v. Crawford, 165 S.E.2d 640, 647 (S.C. 1969); S.C. Code Ann. § 15-51-10. The South Carolina survival statute provides that a cause of action for injuries to a person shall survive the person's death, with damages recoverable by the legal representative of the deceased. S.C. Code Ann. § 15-5-90. These statutes permit a plaintiff to bring tort actions that previously were barred under common law. The Act does not preempt wrongful death or survival actions, and the plaintiff may be able to recover damages in this wrongful death and survival action if she proves her claims.

X.  Conclusion

The plaintiff cannot recover for her product liability and negligence claims because the defendants placed warnings on their cigarette products that were adequate as a matter of law. Therefore, the Court grants in part the defendant's motion to dismiss the plaintiff's complaint, and the Court dismisses Count I of the plaintiff's complaint for product liability and Count II of the plaintiff's complaint for negligence.

Pursuant to Cipollone, the plaintiff may claim that cigarette manufacturers concealed material facts that they had a duty to disclose through some means other than advertising or promotion. The plaintiff has not set forth any duty owed by the defendant to disclose the danger

of addiction or any other unknown dangers related to their cigarette products. Therefore, the plaintiff's claims regarding concealment of material facts are dismissed.

The amended complaint is replete with references to the defendants' failure to warn. These claims are preempted. As a result, ferreting out the plaintiff's claims that are not preempted is difficult. As the amended complaint now stands, the plaintiff has made some allegations that may be appropriate and many allegations that are not appropriate. It appears however that the complaint does set forth several causes of action that fall under the category of fraudulent misrepresentation. Claims of fraudulent misrepresentation are not preempted.

The Court grants in part the defendant's motion to dismiss with respect to Count III Fraudulent Inducement, Fraudulent Misrepresentation, and Deceptive Advertising. The plaintiff alleges that the defendants made false representations to the federal government, but the plaintiff has not alleged that the decedent relied on those misrepresentations. Therefore, this claim is dismissed. The plaintiff's claim that the defendants made "false explanations to consumers and governmental entities regarding the health hazards of tobacco and the addictive qualities of nicotine through their deceptive advertising" is dismissed because the plaintiff has failed to allege the speaker, time, place, and contents of these alleged false representations in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. The plaintiff's claim concerning Phillip Morris's alleged false newspaper advertisement remains.

The following counts of the amended complaint remain: Count III Fraudulent Inducement, Fraudulent Misrepresentation, and Deceptive Advertising- but only with respect to the alleged false newspaper advertisement made by Phillip Morris; Count IV Negligent Misrepresentation; Count V Wrongful Death; and Count VI Survival. The Court invites the

defendants to move to strike the plaintiff's preempted claims from the complaint.

    **AND IT IS SO ORDERED.**

                                                   */s/ C. Weston Houck*
                                                  **C . WESTON HOUCK**
                                                  **UNITED STATES DISTRICT JUDGE**

October 12, 2007
Charleston, South Carolina